IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| FRANK LAMONT SWAIN and ) | Case No. 00-42395 |
| ESTHER MARIE SWAIN, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| FRANK LAMONT SWAIN and ) | Adversary No. 05-4092 |
| ESTHER MARIE SWAIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| W. JAMES ICENOGLE, Individually ) | |
| and in his capacity as Camden County ) | |
| Prosecuting Attorney ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Defendant W. James Icenogle, individually and in his capacity as the Camden County, Missouri Prosecuting Attorney (the PA), filed a Motion to Dismiss this adversary proceeding, claiming he is entitled to absolute immunity. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I deny the motion to dismiss.

## FACTUAL BACKGROUND

The facts in this case are somewhat unusual. On February 15, 2000, debtor/plaintiff Esther Marie Swain executed a check in the amount of $17,271.52 to Scott's Concrete, Inc. (Scott's). The check was returned marked "insufficient funds." On March 19, 2000, a letter from the PA was issued to Ms. Swain informing her that, unless she made the check good within ten days, she would be prosecuted. On May 30, 2000, Ms. Swain made restitution to Scott's and paid the extra costs and fees associated with writing a bad check. It is unclear whether Ms. Swain negotiated with the PA for leniency in the amount of days required for the restitution, but she was not prosecuted at that time. In any event, the check was paid in full along with any required fees.

On June 28, 2000, Ms. Swain, along with her husband, Frank Lamont Swain, filed a Chapter 13 bankruptcy petition. Significantly, the bankruptcy case was filed within 90 days after Ms. Swain had made restitution, thereby creating an issue as to whether such payment was a preferential transfer.[1] This issue likely would never have arisen had the Swains' Chapter 13 case been successful. On November 6, 2001, however, this Court converted the case to Chapter 7. Subsequent to the conversion, the Chapter 7 trustee brought an adversary proceeding against Scott's, contending that it had received a preferential payment. Eventually, the trustee settled the case and Scott's returned $11,500 to the trustee. On February 20, 2002, the debtors received a Chapter 7 discharge.

On August 12, 2002, some 31 months after the check was executed, the PA sent a

---

[1] 11 U.S.C. § 547.

second letter to Ms. Swain informing her that she had executed a check for insufficient funds in the amount of $17,271.52, and that, unless she made restitution within ten days, she would be prosecuted. Thus, the letter demanded that she make restitution a second time, and no credit was given for the $5,771.52 that Scott's had kept as part of its settlement with the trustee. In response to this letter, on August 21, 2002, counsel for Ms. Swain wrote a letter to the PA advising him not to pursue prosecution because Ms. Swain had already made restitution, and because the debt had been discharged.[2] On August 29, 2002, the Chapter 7 trustee for the Swains' case also wrote to the PA informing him that Ms. Swain had made restitution, that the repayment of $11,500 had been made because the trustee, not Ms. Swain, had initiated the preference action, and that he should not pursue prosecution of Ms. Swain.[3]

On September 26, 2002, after acknowledging receipt of the letters from both attorneys, and after telephone conversations with these same attorneys, the PA drafted an Affidavit of Probable Cause (the Affidavit) concerning the bad check.[4] The Affidavit stated that "Scott's Concrete had no meaningful defense to the [preference] claim . . . as a result of which Scott's Concrete settled the claim by paying the sum of $11,500.00 . . . ."[5] The Affidavit further referred to notices sent to Ms. Swain on August 19, 2002, and September 3, 2002, advising her that the check had not been paid because of insufficient funds. And, the

---

[2] Pl. Ex. # 9.

[3] Pl. Ex. # 10.

[4] Pl. Ex. # 12.

[5] *Id.*

3

Affidavit states that "[t]he unpaid amount of such check, $11,500, has not been paid," when, in fact, the check had been paid in full by Ms. Swain. The Affidavit was actually signed and sworn to by Wendy Wilson, an employee of the PA's office who works in the bad check division. Both the PA, in his deposition, and counsel for the PA at the hearing, represented, that the PA did all of the investigation regarding the Affidavit and instructed Ms. Wilson to sign it. On October 4, 2002, the Circuit Court of Camden County, Missouri, upon presentation of the Affidavit, issued a warrant for Ms. Swain's arrest.[6]

On February 29, 2004, nearly 18 months after the warrant was issued, Ms. Swain was arrested and jailed until she could hire an attorney and post a bond. It is unclear how long Ms. Swain actually remained incarcerated, but on March 31, 2004, the charges against Ms. Swain were dropped because, according to the PA, the statute of limitations had run.[7]

Ms. Swain first filed an adversary proceeding against Scott's, and Jane Ellen Martin, Scott's principal, claiming a violation of the automatic stay and the discharge injunction. The PA voluntarily submitted to a deposition in that case. In his deposition, he testified that Jane Martin informed him that Swain's Chapter 13 bankruptcy case had been converted to Chapter

---

[6] Pl. Ex. # 13.

[7] In his deposition the PA testified that the statute of limitations to pursue a class D felony runs until such time as an information is filed. There is no evidence as to when, if ever, an information was filed. Section 556.036.2(2) of Missouri's Revised Statutes provides that prosecutions for felonies must be commenced within three years. Section 556.036.5 provides that a prosecution is commenced either when an indictment is found or an information filed. Mo. Stat. Ann. § 556.036.2(2) and 556.036.6 (1999). The statute of limitations ran in this case on February 15, 2003, three years after Ms. Swain executed the check for insufficient funds. Pl. Ex. # 4 (James Icenogle's Deposition), pg. 41, ln. 11-12. The Affidavit was filed on September 26, 2002, and the arrest warrant issued on October 4, 2002, but Ms. Swain was not arrested until February 29, 2004, over four years after she executed the bad check.

4

7. He stated he performed all of the investigation, and made all of the decisions to pursue this matter after being informed of the conversion. He stated he had no further contact with Ms. Martin, after she informed him of the conversion. This Court entered summary judgment in favor of the defendants because the only allegation was that Ms. Martin informed the PA of the conversion of the case to Chapter 7.

Mr. and Mrs. Swain then filed this adversary proceeding seeking monetary damages from the PA. The PA filed a motion to dismiss on the grounds that he is absolutely immune from civil prosecution for monetary damages. On August 9, 2005, this Court held a hearing on the motion to dismiss.[8] No witnesses were called. Without objection, counsel referred to various exhibits attached to the Complaint, including the deposition of the PA taken from the prior case.

## DISCUSSION

The Federal Rules of Civil Procedure provide that a defendant is entitled to dismissal of an action if the plaintiff's complaint fails to state a claim for which relief can be granted.[9] The party against whom the motion is filed, however, is given every reasonable inference,

---

[8] Counsel for the Swains read from the PA's deposition, voluntarily given in the previous adversary, at the hearing on the PA's motion to dismiss. No party objected. Since the deposition is part of this Court's record in a previous case, and since the PA did not object to its use in this case, I take judicial notice of its contents.

[9] Fed. R. Civ. P. R. 12(b)(6) as made applicable to this proceeding by Fed. R. Bankr. P. 7012.

and the Court presumes that all of the factual allegations are true.[10] All of the allegations in the Complaint, therefore, are taken as true and construed in a light most favorable to the Swains.[11] In order to grant this motion to dismiss, the Court must decide, based only on the allegations contained in the Complaint, that the Swains can prove no set of facts to support their claim that the PA was acting outside the scope of his duties when he drafted the Affidavit.

In this case, however, counsel for the Swains introduced the PA's deposition testimony, without objection. Additionally, the parties made available to the Court both letters informing Ms. Swain about the bad check, the letter from the Swain's bankruptcy counsel to the PA, both letters from the Chapter 7 trustee to the PA, the Affidavit, the arrest warrant, and an affidavit from Wendy Miller. As such, I will treat this as a motion for summary judgment. Rule 7056 of the Federal Rules of Bankruptcy Procedure provides that Rule 56 of the Federal Rules of Civil Procedure applies when a party moves for summary judgment in an adversary proceeding in this Court. Rule 56 states that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12]

---

[10] See *MM&S Financial, Inc. v. National Ass'n of Securities Dealers, Inc.,* 364 F.3d 908, 909 (8th Cir. 2003).

[11] See *Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554, 556 (8th Cir. 1998).

[12] *Celotex v. Catrett*, 477 U.S. 317, 322-26 (1986); *Tudor Oaks Limited Partnership v. Cochrane,* 124 F.3d 978, 981 (8th Cir. 1997), *cert. denied*, 522 U.S. 1112.

The issue before me is whether the PA is entitled to absolute immunity in this case. The United States Supreme Court recognizes two kinds of immunities.[13] Most public officials are entitled to qualified immunity, which insulates government officials from civil liability for damages for their discretionary functions as long as the officials can show that their acts were objectively reasonable, or that they acted in good faith.[14] Under the objective test of good faith adopted by the Supreme Court, officials must show that "their conduct does not violate clearly established constitutional rights of which a reasonable person would have known."[15] Absolute immunity, on the other hand, insulates certain government officials from civil liability as long as their actions, even if illegal or unconstitutional, are within the scope of their duties.[16] The United States Supreme Court has recognized that, at common law, prosecutors enjoyed absolute immunity from civil liability with respect to their prosecutorial conduct.[17] Courts have determined that a prosecutor is in the same special category as judges, and is, therefore, entitled to the same immunity accorded to judicial officers, as long as the

---

[13]*Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993);

[14]*Billado v. Appel*, 165 Vt. 482, 486, 687 A.2d 84, 87 (Vt. 1996).

[15]*Buckley v. Fitzsimmons*, 509 U.S. at 268, 113 S. Ct. at 2613 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1986)).

[16]*See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 124, 118 S. Ct. 502, 506-07, 139 L. Ed. 2d 471 (1997); *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S. Ct. 984, 993, 47 L. Ed. 2d 128 (1976).

[17]*Buckley v. Fitzsimmons*, 509 U.S. at 273, 113 S. Ct. at 2615; *Imbler v. Pachtman,* 424 U.S. at 422-23, 96 S. Ct. at 991; *Gill v. Ripley*, 352 Md. 754, 764, 724 A.2d 88, 93 (Md. Ct. App. 1999).

prosecutor is acting within the scope of his duties.[18] The issue, therefore, becomes what prosecutorial conduct is absolutely immune. The Supreme Court took the functional approach. It held that a prosecutor was absolutely immune for conduct in "'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process' but reserved [absolute immunity] with respect to investigative and administrative conduct."[19] The Court clarified this further in *Buckley v. Fitzsimmons,*[20] when it explained that the acts a prosecutor takes in preparing for the "initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."[21] On the other hand, if "a prosecutor performs the investigative functions normally performed by a detective or police officer," he is entitled to qualified immunity only.[22] When a prosecutor assumes the role of a detective in "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, he is entitled to no more than the qualified immunity afforded detectives and police officers."[23] As such, when determining

---

[18]*Gill v. Ripley*, 352 Md. at 764, 724 A.2d at 93.

[19]*Gill v. Ripley*, 352 Md. at 766, 724 A.2d at 94 (quoting *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1935, 114 L. Ed. 2d 547 (1991)); *Kalina v. Fletcher,* 522 U.S. at 125, 118 S. Ct. at 507.

[20]*Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993).

[21]*Id.* at 509 U.S. at 273, 113 S. Ct. at 2615.

[22]*Id.*

[23]*Kalina v. Fletcher,* 522 U.S. at 126, 118 S. Ct. at 507-08.

which type of immunity applies, courts must examine the "'nature of the function performed, not the identity of the actor who performed it.'"[24] In *Kalina v. Fletcher,* the prosecutor commenced criminal proceedings by filing an unsworn information, an unsworn motion for an arrest warrant, and a sworn certification of probable cause.[25] When the charges were later dropped, the defendant brought a § 1983 action against the prosecutor. The Supreme Court held that the prosecutor was entitled to absolute immunity when she prepared the charging documents. When she certified the affidavit of probable cause, however, she was acting as a complaining witness, and was entitled to qualified immunity.[26] The PA relies on this case for the premise that only the person who certifies the affidavit of probable cause is acting as a complaining witness, and Wendy Wilson so certified. Otherwise, the PA argues that all of his actions were concerned with his duties as an advocate for the state.

The PA misreads these cases. There is no discussion in *Kalina* as to who did all of the investigation prior to the preparation of the charging documents. By his own admission, the PA states that he examined the file, that he decided to send the second letter, that he researched the bankruptcy case, that he spoke with Ms. Swain's bankruptcy attorney and her Chapter 7 trustee, that he determined she had not made restitution, that he developed all of

---

[24]*Id.,* 522 U.S. at 127, 118 S. Ct. at 508 (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 545, 98 L. Ed. 2d 555 (1988))

[25]*Id.*, 522 U.S. at 120-21, 118 S. Ct. at 505.

[26]*Id.* 522 U.S. at 131, 118 S. Ct. at 510.

the facts contained in the Affidavit, and that he drafted the Affidavit.[27] The PA explained that in the bad check division, the PA acts as the investigating officer, because the investigation begins with a referral directly to his office from the recipient of the bad check.[28] The PA also stated that Wendy Wilson knew nothing about the case, and that he was the one who handled the entire case after the bankruptcy.[29] Counsel for the PA argued at the hearing that Ms. Wilson had investigated the facts from the case file and swore to the facts included in the Affidavit as accurate. However, counsel could not explain how Ms. Wilson, who is not an attorney, could make the legal conclusions contained in the Affidavit, nor did he explain the inconsistency between Ms. Wilson's affidavit and the PA's testimony in his deposition. In addition, counsel for the PA argued that the PA drafted the affidavit, following his own investigation, determined which facts to include, made his own legal conclusions, then ordered an employee under his control to certify the facts contained in the Affidavit as accurate. He then argued that, based on *Kalina*, the prosecutor is absolutely immune for his conduct, and Ms. Wilson, as a complaining witness, has qualified immunity. However, it elevates form over substance to claim that the doctrine of absolute immunity can be parsed in this way. Ms. Wilson may well have had no choice but to certify the Affidavit. She also may well have had no expertise that would allow her to certify as to the accuracy of the facts

---

[27]Pl. Ex. # 4 (Deposition of James Icenogle), pg. 5, ln. 17-20; pg. 25, ln. 7; pg. 28, ln. 11-17; pg. 29, ln. 14-22; pg. 31, ln. 9-25.

[28]*Id.* at pg. 20, ln. 18-25; pg. 21, ln. 1-2; pg. 32, ln. 7-17.

[29]*Id.* at pg. 23, ln. 19-21.

contained therein. Thus, there is a genuine issue of material fact as to whether the PA was acting in his capacity as a prosecutor, or as an investigative officer at the time. For that reason, I will deny the PA's motion to dismiss. The parties should proceed with discovery and prepare for trial. **The trial will be held in Courtroom 6B at the Charles Evans Whittaker-United States Courthouse, 400 East 9th Street, Kansas City, Missouri 64106, on Friday, October 28, 2005, at 9:00 a.m.**

An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: August 18, 2005

Copy to: William P. Nacy
Edward S. Sloan
Robert H. Gardner